**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Ameer Alghusain, | ) | **CASE NO. 1:21 CV 693** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| v. | ) | |
| | ) | |
| Jason L. Nemeth, et al., | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendants.** | ) | |

*Pro se* plaintiff Ameer Alghusain filed this action against numerous Defendants,

including: Jason L. Nemeth; Joseph L. Nemeth, III; Vinod K. Gupta; Nita Gupta; the Ohio

Ethics Commission; the Ohio Turnpike and Infrastructure Commission; Lorain County

Community College ("LCCC"); the Ohio Department of Higher Education; IGW Solutions,

LLC; Lorain County Homebuyers, LLC; Ohio Governor Mike DeWine; the Ohio Attorney

General; Thomas J. Stickrath, Director of the Ohio Department of Public Safety; Buckingham,

Doolittle & Burroughs, LLC; Edison Welding Institute; and GexPro Rexel USA, Inc.[1] (Doc. No.

28).

Plaintiff asks this Court for damages; an order for the return of his gun; a permanent

injunction "to compel GexPro, Edison Welding Institute and all other defendants from using

Plaintiff's trade secrets, trademarks, trade names, pending patents and all other confidential

information in the specific markets [of] Rail Welding, Rail Signaling, Rail Power Systems and

---

[1] Additional defendants Dennis Cocco, Quicken Loans, LLC, John Dearborn, and Ratanjit Sondhe were dismissed from the action pursuant to stipulated dismissal orders (See Doc. Nos. 152, 168, 171, and 176).

Railway Grounding"; and a "civil restraining order" against all Defendants. (*Id.* at 80-82).

For the reasons that follow, this action is dismissed in part.

## I. BACKGROUND

Plaintiff's Complaint is largely incomprehensible and difficult to follow, consists of conclusory allegations, and is devoid of any factual support of the purported claims. [2] The Complaint, however, appears to arise from a series of events involving his business ventures and an accident that occurred on rental property located in Lorain, Ohio.

As best the Court can discern, Plaintiff lived in Ohio while working as a railroad contractor. He had some business ventures that involved the Great Lakes Innovation and Development Enterprise ("GLIDE") at LCCC, and these ventures ultimately failed. (*See id.* at 28, 35, 44-45).  Plaintiff now appears to claim that Defendants have collectively caused his

---

[2] On July 28, 2020, Plaintiff filed a 192-page complaint in the Northern District of California, San Jose Division against 13 defendants, consisting of eight claims for relief. (Doc. No. 1). On August 3, 2020, Plaintiff filed a "Motion to Admit a Revised Complaint"seeking to include additional defendants and attaching additional exhibits. (Doc. No. 3).  One week later, on August 11, 2020, Plaintiff filed three additional Amended Complaints: the first-docketed amended complaint was entitled "Revised Complaint" and contained 14 claims for relief (Doc. No. 25);  the second-docketed amended complaint contained only exhibits (Doc. No. 26); and the third-docketed amended complaint sought to name "EWI and GexPro as defendants" and to attach additional exhibits (Doc. No. 28). Plaintiff filed a "Motion for Leave to File Second and Final Amended Complaint" on April 16, 2021 (Doc. No. 186), which appears to be opposed by Defendants Vinod and Nital Gupta.

The docket indicates that on August 17, 2020, the Northern District of California granted Plaintiff's Motion to File Amended Complaint, referring to Docket No.3 (See Doc. No.32). It is not clear from the docket, however, whether the Northern District of California addressed Plaintiff's three consecutively-filed amended complaints (Doc. Nos. 25, 26, and 28). This Court, in affording this *pro se* plaintiff wider latitude at the initial pleading stage, will construe the Amended Complaint last filed on August 11, 2020 – Docket No. 28– to be the operative complaint in this action ("Complaint"). Because Plaintiff's Motion for Leave to file a "Second and Final Amended Complaint" did not include a proposed amended complaint, and was filed 8 months after Plaintiff's first Amended Complaint, this Court denies Plaintiff's Motion (Doc. No. 186). *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014).

business failures and caused him to lose pending patent applications. (*Id.* at 26). Plaintiff claims that Defendants have a "secret" relationship and have engaged in a conspiracy against Plaintiff in order to benefit each other, by conspiring to apply for state and federal funding, defrauding state and federal agencies, maneuvering public funding into their own private companies, denying others the available educational and funding opportunities, and limiting or denying state and federal resources "to anyone who is not part of their secret alliance." (*Id.* at 11-12). Plaintiff states that this "secret alliance is much worse than the KKK." (*Id.* at 12). Plaintiff states that Governor DeWine "is the god father and protector of all defendants named in this case, with no exception." (*Id.* at 30).

Plaintiff also appears to have engaged in a verbal agreement to rent a home from Defendant Jason Nemeth. (*Id.* at 8). According to Plaintiff, he suffered an injury while on the property, incurred medical bills, and was unable to work as a result of his injuries. (*Id.* at 34-35). Plaintiff alleges that he was wrongfully evicted from the home and Defendants Jason and Joseph Nemeth retained his personal belongings, which included a gun. (*Id.* at 36-39). Plaintiff states in his introduction that he now believes "Defendants' inability to gain access to his valuable trade secrets is also a factor for this wrongful eviction" and "the accident maybe was staged by Defendants, in a thug way, to weaken Plaintiff and his ability to work in the extreme nature of the railroad business" (*Id.* at 3).

Plaintiff's Complaint consists of 14 state and federal causes of action: (1) violation of the Second Amendment; (2) violation of the Fourteenth Amendment; (3) violation of "US Civil Rights Act of 1964" and Ohio civil rights laws; (4) "discriminatory neglect" and "bodily injury"; (5) federal and state housing violations; (6) theft under Ohio law; (7) defamation, libel,

and slander under California law; (8) violation of Ohio ethics laws; (9) violation of Ohio Public Records Act; (10) engaging in a pattern of corrupt activity under Ohio law; (11) violation of the Equal Employment Opportunity Act; (12) violation of the Ohio's Uniform Trade Secrets Act; (13) violation of Ohio's Deceptive Trade Practices Act; and (14) legal malpractice under Ohio law. (*Id.* at 52-72).

Plaintiff includes in his Complaint a "personal statement" in which he expresses his concern for "all discriminated-against people in this great country," quotes the Preamble to the U.S. Constitution, and urges "the people and the government of the people to reform guns laws, reform ethics and immigration laws." (*Id.* at 74, 77).  And, he attaches a copy of his U.S. passport within his statement.

On March 29, 2021, this case was transferred to this Court. (*See* Doc. No. 172).

The parties filed the following dispositive motions: Motion to Dismiss, filed by Governor DeWine, Ohio Attorney General, Thomas Strickrath, Ohio Ethics Commission, Lorain County Community College, and Ohio Department of Higher Education (Doc. No. 67); Motion to Dismiss (Doc. No. 84) and Amended Motion to Dismiss (Doc. No. 194), filed by IGW Solutions LLC; Motion to Dismiss (Doc. No. 85) and Amended Motion to Dismiss (Doc. No. 193), filed by GexPro Rexel USA, Inc.; Motion to Dismiss, filed by Ohio Turnpike and Infrastructure Commission "erroneously sued as the Ohio Turnpike Commission" (Doc. No. 87); Motion to Dismiss, filed by Edison Welding Institute (Doc. No. 116); Motion to Dismiss, filed by Buckingham, Doolittle & Burroughs LLC (Doc. No. 119); Motion to Dismiss, filed by Ratanjit Sondhe (Doc. No. 121); Motion to Dismiss (Doc. No. 122) and Amended Motion to Dismiss (Doc. No. 196), filed by Joseph L Nemeth, III; Motion to Dismiss (Doc. No. 134) and

Amended Motions to Dismiss (Doc. Nos. 178, 179), filed by Nita Gupta and Vinod K. Gupta; and Motion to Dismiss (Doc. No. 155) and Amended Motion to Dismiss (Doc. No. 195), filed by Jason L. Nemeth. Plaintiff opposed each dispositive motion.

On April 19, 2021, Defendants Nita and Vinod Gupta filed a Motion for Sanctions of Dismissal (Doc. No. 189), alleging that Plaintiff has engaged in abusive and threatening conduct directed at defense counsel as well as their clients. In support, Defendants attach correspondence from Plaintiff containing vulgar and inappropriate language and subject matter. On May 12, 2021, Defendants GexPro Rexel USA, Inc., IGW Solutions LLC, Jason L. Nemeth, and Joseph L. Nemeth, III filed supplements to their Amended Motions to Dismiss (Doc. Nos. 208-211, respectively).  In these supplements, Defendants allege that Plaintiff has continually harassed the Defendants, the Defendants' family and friends, and the Defendants' attorneys since the beginning of the case, and in support, Defendants identify continued threats Plaintiff has made to Defendants, defense counsel, and their families, as well as "emails filled with violently homophobic, misogynistic, racially charged and/or sexually explicit messages and photos." (*See id.* at 1).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for the dismissal of claims when the claimant has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under this rule, the function of the Court is to test the legal sufficiency of the complaint. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  And in reviewing the complaint, the Court must construe the pleading in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the

-5-

complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*
*Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007);*Ashcroft v.*
*Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Legal conclusions and
unwarranted factual inferences, however, are not entitled to a presumption of truth. *Twombly*,
550 U.S. at 555; *see also Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d
209 (1986) (The Court is "not bound to accept as true a legal conclusion couched as a factual
allegation.").

The Supreme Court explained that "a claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the reasonable inference that the defendant
is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78. Furthermore, "the plausibility
standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility
that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that
requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Additionally, courts must read Rule 12(b)(6) in conjunction with Federal Civil
Procedure Rule 8(a)(2)'s requirement that a plaintiff need offer "only 'a short and plain
statement of the claim showing that the pleader is entitled to relief..'" *Erickson v. Pardus*, 551
U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (citing *Twombly*, 550 U.S. at 596). Although
specific facts are not required, to meet the basic minimum notice pleading requirements of Rule
8, Plaintiff's complaint must give the defendants fair notice of what the plaintiff's legal claims
are and the factual grounds upon which they rest. *Bassett v. National Collegiate Athletic Ass'n*,
528 F.3d 426, 437 (6th Cir. 2008). The plaintiff's obligation to provide the grounds for relief
"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

-6-

of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations "must be enough to raise a right to relief above the speculative level." *Id*.

A complaint that fails to state the specific acts of the defendant that allegedly violated the plaintiff's rights fails to meet the notice requirements of Federal Rule of Civil Procedure 8(a). *Phillips v. Ballard*, No. 5:17-CV-301-REW, 2019 U.S. Dist. LEXIS 93206, at *55 (E.D. Ky. June 4, 2019) (finding a claim that "purports to assert that every one of the 40+ named Defendants was negligent based upon some unspecified event mentioned somewhere within the 90+-page expanse of the Plaintiff's pleadings" fails to comply with Rule 8); *see also Hall v. ECDI*, No. 1:13 CV 1793, 2013 U.S. Dist. LEXIS 155607, at *3 (N.D. Ohio Oct. 30, 2013) (stating that where Plaintiff failed to cite a specific provision of the Federal Truth in Lending Act that Defendant allegedly violated, the complaint failed to provide Defendant fair notice of the plaintiff's claim required under Rule 8). "[N]either the Court nor Defendants are obligated to search through the Complaint and its voluminous exhibits in order to glean a clear and succinct statement of each claim for relief. It is Plaintiffs' responsibility to edit and organize their claims and supporting allegations into a manageable format." *Laster v. Pramstaller*, No. 08-CV-10898, 2008 U.S. Dist. LEXIS 34080, at *4-5 (E.D. Mich. Apr. 25, 2008) (citing *Windsor v. Colorado Dep't of Corr.*, 9 Fed. Appx. 967, 968 (10th Cir. 2001));

*Pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). And the Court holds a *pro se* complaint to a less stringent standard than one drafted by an attorney. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines*, 404 U.S. at 520). The Court is not required, however, to conjure

-7-

unpleaded facts or construct claims on Plaintiff's behalf. *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citation omitted); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985) (finding that allowing courts to "to explore exhaustively all potential claims of a *pro se* plaintiff would * * * transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party"). A court "cannot construct possible but potentially not asserted claims for any party, including a *pro se* plaintiff, and then proceed to test whether the asserted facts fit that claim or claims so as to evade dismissal of a complaint. The Court's role is to adjudicate disputes, not assist in asserting them." *Tylicki v. Gee*, No. 2:08-CV-936, 2009 U.S. Dist. LEXIS 7334, at *9 (S.D. Ohio Jan. 15, 2009).

### III. DISCUSSION

### A. Federal Claims

Within Plaintiff's fourteen claims for relief, he appears to raise the following federal claims: (1) violation of the Second and Fourteenth Amendments; (2) violation of the "US Civil Rights Act of 1964"; and (3) violation of the Fair Housing Act ("FHA"). These claims must be dismissed.

### 1. Second and Fourteenth Amendments

In his First Claim, Plaintiff alleges in one very brief paragraph that Defendants "State of Ohio, represented by the State of Ohio Official Agencies," which he lists as the Ohio Ethics Commission, the Ohio Turnpike and Infrastructure Commission, and the Ohio Department of Higher Education, as well as Jason L. Nemeth and Vinod K. Gupta, violated his right "to keep and bear arms" by denying him access to "his own gun, at his own house." (Doc. No. 28 at 52).

Plaintiff states that he "begged Defendants many times to surrender his gun, * * * but Defendants refused and ignored his requests."  (*Id.*)

In his Second Claim, Plaintiff alleges that the State of Ohio (again, through the acts of the State agencies listed above) violated his Fourteenth Amendment rights to equal protection and due process. In support, Plaintiff summarily states that these defendants "considered Plaintiff a 'fake American' and not a 'citizen of the United States"; deprived Plaintiff of his liberty to enter Lorain County Community College and his own house without due process of law"; deprived Plaintiff of his personal possessions, including a gun and business records; and denied Plaintiff "equal protection of the laws, specifically the Civil Rights Act of 1964." (Doc. No. 28 at 52-54).      Plaintiff's Complaint, however, fails to provide any facts connecting any of the State agencies or officials to his purported civil rights claims. Nor does Plaintiff attribute any facts connecting Vinod K. Gupta to a purported eviction. It is a basic pleading requirement that a plaintiff must attribute specific factual allegations to particular defendants.  *Twombly*, 550 U.S. at 555 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim); *Kurek v. Ohio Dept. of Dev. Disabilities*, No. 3:16CV623, 2017 U.S. Dist. LEXIS 65473, at *15-16 (N.D. Ohio Jan. 20, 2017) ("[C]onclusory allegations of collective, unspecified, and undifferentiated wrongdoing is not sufficient [as] vaguely lump[ing] all defendants together without providing any factual allegations that specify separate acts fails to satisfy the *Iqbal/Twombly* standard.") (collecting cases).

The only defendant plausibly linked to an eviction is Jason L. Nemeth, who appears to have been Plaintiff's landlord.  But Nemeth is not a state actor and therefore Plaintiff cannot maintain a civil rights action against him. *See Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct.

-9-

1908, 68 L.Ed.2d 420 (1981) (Plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States). Generally, to be considered to have acted "under color of state law," the person must be a state or local government official or employee. Nemeth is a private individual, and Plaintiff does not allege that he acted under color of state law. Nor can the Court infer from the sparse facts alleged that Nemeth's actions were clothed with the authority of state law.

Accordingly, Plaintiff's Complaint fails to provide sufficient notice of his precise claims against the specific defendants and he fails to present any Second or Fourteenth Amendment claim upon which this Court may grant relief.  The Court will not be forced to guess the substance of Plaintiff's claims or construe claims on his behalf. *Beaudett v. City of Hampton*, 775 F.2d at 1277-78. Plaintiff's purported claims outlined in his First and Second Claims are, therefore, dismissed.

### 2. "US Civil Rights Act of 1964"

Plaintiff states in his Third Claim for Relief that Jason L. Nemeth told him that he cannot have office space at the GLIDE Center and he is not welcome on LCCC's campus; Plaintiff won $95,000 from the LCCC Innovation Fund entrepreneurship program but LCCC denied him disbursement checks; at the direction of Governor DeWine, "other Ohio agencies," and Vinod K. Gupta, LCCC "evicted" Plaintiff from campus; and Defendants "and specifically [LCCC] entrepreneurship center, GLIDE, denied Plaintiff educational, training, and entrepreneurship benefits that he is entitled to under the US Civil Rights Act of 1964 and under [the] Ohio Rev. Code § 4112.02." (Doc. No. 28 at 54-55).  Plaintiff also states that "Defendants clearly and collectively crusaded to deprive Plaintiff from other rights under US Civil Rights

-10-

Act of 1964" and Ohio Rev. Code § 4112.02. (*Id.*).

Plaintiff does not identify the specific section(s) of the Civil Rights Act of 1964 that Defendants are alleged to have violated. His Complaint therefore fails to provide Defendant fair notice of the plaintiff's claim required under Rule 8. *See Hall v. ECDI*, No. 1:13 CV 1793, 2013 U.S. Dist. LEXIS 155607, at *3 (N.D. Ohio Oct. 30, 2013).

Moreover, the Complaint consists only of bare, conclusory assertions, providing no facts upon which a court could find a violation of the Civil Rights Acts. It, therefore, fails to state a claim under Rule 12(b)(6). *See Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994). It is well-established that courts are not required "to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir.1989), abrogated on other grounds, *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc). Indeed, courts have been unwilling to "abrogate basic pleading essentials in *pro se* suits." *Wells*, 891 F.2d at 594. Nor are courts required to "explore exhaustively all potential claims of a *pro se* plaintiff," because to do so, "would * * * transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett*, 775 F.2d at 1278.

Additionally, Plaintiff's failure to identify a particular legal theory in his Complaint places an unfair burden on Defendants to speculate on the potential claims that Plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action. *See Wells*, 891 F.2d at 594; *Clements v. Brimfield Twp.*, No. 1:12 CV 1180, 2012 U.S. Dist. LEXIS 162598, at *16 (N.D. Ohio Nov. 14, 2012).

Plaintiff, therefore, fails to state a claim for violation of "US Civil Rights Act of 1964"

-11-

upon which relief may be granted.

### 3. Fair Housing Act

Within his Fifth Claim for Relief, Plaintiff appears to allege a wrongful eviction in violation of the Fair Housing Act ("FHA"). The FHA, 42 U.S.C. § 3604, makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." Those protections were extended to disabled persons in 1988. *See* 42 U.S.C. § 3604(f)(2); *see Gaston v. Lake Shore Towers*, No. 1:18 CV 2440, 2019 U.S. Dist. LEXIS 31301, at *4 (N.D. Ohio Feb. 27, 2019).

Plaintiff's FHA claim, however, is entirely conclusory.  He states that "Defendants" did not utilize proper court eviction proceedings and "took for themselves" Plaintiff's personal belongings, including religious items; "[w]hen Plaintiff seemed unable to work, * * * Defendants decided to wrongly evict Plaintiff"; and "Plaintiff also believes his race, origin, religion, and roots were collective factors for wrongful eviction." (Doc. No. 28 at 57-58). There are no facts contained in this claim that plausibly suggest Plaintiff's purported eviction by either Jason L. Nemeth or Joseph L. Nemeth, III was motivated by Plaintiff's race, national origin, religion, or disability.[3] Further, there are no allegations that any other defendants participated in the purported eviction.

Plaintiff's Fifth Claim containing legal conclusions and "an unadorned, the-defendant-unlawfully-harmed-me accusation," therefore, fails to state a plausible FHA

---

[3] Although Plaintiff asserts in his Complaint that he entered into a rental agreement with Jason L. Nemeth, Plaintiff repeatedly refers to both defendants collectively as "Defendants Brothers," especially in the context of his housing arrangement.  (*See* Doc. No. 28 at 13, 34, 36).

-12-

claim for which relief may be granted. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

## B. State Claims

Plaintiff also appears to allege the following state claims: (1) discrimination in violation of Ohio Revised Code § 4112.02; (2) negligence and violations of Ohio Revised Codes § 1923 ("Forcible Entry and Detainer") and § 5321 ("Landlords and Tenants"); (3) theft in violation of Ohio Revised Code § 2913.02; (4) defamation, libel, and slander; (5) violation of Ohio Ethics Laws; (6) violation of Ohio's Public Records Laws; (7) violation of Ohio Revised Code § 2923.32 (Racketeering Influenced and Corrupt Organizations Act or "RICO"); (8) violation of Ohio's Equal Employment Opportunity Act; (9) violation of Ohio Revised Code §§ 1333.61 through 1333.69 ("Uniform Trade Secrets Act"); (10) violation of Ohio Revised Code § 4165.01 *et seq.* ("Deceptive Trade Practices"); and (11) legal malpractice.

### 1. Discrimination under Ohio Revised Code § 4112.02

Plaintiff appears to allege discrimination under Ohio law within his Third, Fourth, and Fifth Claims.  In his Third Claim, he alleges that Defendants, including LCCC's GLIDE program "denied Plaintiff educational, training, and entrepreneurship benefits that he is entitled to under * * * Ohio Revised Code § 4112.02" and "Plaintiff was denied benefits and rights guaranteed under the law at [LCCC] based on his race, national origin, religion, and disability." (*See* Doc. 28 at 22, 54-55). He also alleges that he was removed from LCCC's campus "at the direction of [Governor DeWine] and Vinod Gupta and other Ohio agencies." (*Id.*). Finally, he summarily states that "Defendants clearly and collectively * * * violated Ohio Revised Code § 4112.02." (*Id.* at 55).

-13-

In his Fourth Claim, Plaintiff alleges that Defendants "thought of Plaintiff * * * as a lower-class American Citizen" and ignored his repeated requests to repair the rental property. (*Id*. at 55-56). He also states that Defendants' neglect of the property "occurred with discrimination in mind." (*Id.* at 56).

Within his Fifth Claim for Relief, Plaintiff appears to allege a discriminatory eviction in violation of Ohio Revised Code § 4112.02, stating that "Defendants "did not utilize proper court eviction proceedings and "took for themselves" Plaintiff's personal belongings, including religious items; "[w]hen Plaintiff seemed unable to work, * * * Defendants decided to wrongly evict Plaintiff"; and "Plaintiff also believes his race, origin, religion, and roots were collective factors for wrongful eviction." (Doc. No. 28 at 57-58).

For the reasons previously stated under the Court's discussion of the FHA, Plaintiff's state discrimination claim must also be dismissed.  Plaintiff's state discrimination claim is entirely conclusory and fails to include any facts that plausibly suggest he was "denied disbursement checks," denied "educational, training, and entrepreneurship benefits," removed from LCCC's campus, or evicted from his rental property due to his race, national origin, religion, or disability.  Nor do any facts plausibly suggest Defendants' purported refusal to repair the rental property was motivated by these factors.

Plaintiff's state discrimination claims, which contain legal conclusions and "an unadorned, the-defendant-unlawfully-harmed-me accusation," therefore, fail to state a plausible claim for which relief may be granted. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

### 2. Negligence, Forcible Entry and Detainer, and Wrongful Eviction

Plaintiff's Fourth and Fifth Claims also appear to allege negligence, violation of "Ohio

Revised Code § 1923 (Forcible Entry and Detainer)," and violation of "Ohio Revised Code § 5321 (Landlords and Tenants)."  As best the Court can discern, it appears that Plaintiff alleges that he injured himself on the property he rented from Jason L. Nemeth or Joseph L. Nemeth, III. Plaintiff claims that Defendants "ignored his requests to repair" the property and he "fell after a piece of wood between the jacuzzi and deck broke," causing his injuries. (Doc. No. 28 at 55-56). He claims that Defendants "neglect[ed] the rental unit." (*Id.* at 56). Plaintiff also claims that the Nemeth Defendants did not utilize the proper procedures to evict him and they retained his personal belongings after informing Plaintiff that he could not return to the property. (*Id.* at 57).

To the extent Plaintiff claims the Nemeth Defendants were negligent in the maintenance or repair of the rental property, or violated Ohio Revised Code §§ 1923 and 5321, dismissal at this stage of the proceedings would not be appropriate. Plaintiff may have stated a viable claim for negligence, wrongful eviction, and forcible entry and detainer against the Nemeth Defendants.  The question remains as to whether these Defendants complied with Ohio law concerning the property's maintenance and proper eviction proceedings. Because Plaintiff fails to plausibly suggest participation by any other defendants in this regard, Plaintiff's claims for negligence, wrongful eviction, and forcible entry and detainer are dismissed as to the remaining defendants.

### 3. Theft

Plaintiff's Sixth Claim alleges theft and "illegal possession of personal belongings against his will" in violation of Ohio Revised Code § 2913.02. He asserts that "Defendants, collectively, intentionally, and clearly violated a criminal law" when Defendants "den[ied]

-15-

Plaintiff his personal belongings."  (Doc. 28 at 59).

To the extent Plaintiff seeks charges against Defendants for theft, he fails to allege a cognizable private right of action. "It is well-established that '[a]bsent express authorization, criminal statutes do not create civil causes of action.'" *Richeson v. Select Comfort Retail Corp.*, No. 4:09cv2284, 2011 U.S. Dist. LEXIS 129361, at *11 (N.D. Ohio Nov. 8, 2011) (quoting *Groves v. Groves*, 2010-Ohio-4515,| 2010 Ohio App. LEXIS 3819, at *12 (Ohio App. 2010)) (further citation omitted). Plaintiff does not claim that he has a private right of action under the Ohio criminal statute for which he seeks relief. Even if he were to, he fails to plausibly allege any facts that would support liability under the statute.

Plaintiff, therefore, fails to state a claim for theft upon which relief may be granted.

### 4. Claims Seven through Thirteen

The state claims contained in Plaintiff's Seventh through Thirteenth Claim fail to satisfy the minimum pleading requirements to state a plausible claim and must be dismissed.

In Plaintiff's Seventh Claim, he alleges defamation, libel, and slander under California's Civil Code. This Court will construe Plaintiff's claim under Ohio law. It appears that Plaintiff's basis for this claim is that "Defendants, collectively" made false statements about Plaintiff, describing Plaintiff as an "investment fraud."  He contends that such statements are false and they caused him "special damage" that "amounted to at least negligence." The entire claim is conclusory and devoid of facts and includes, rather, a mere recitation of the elements of defamation.[4] The plaintiff's obligation to provide the grounds for relief "requires more than

---

[4] Under Ohio law, defamation has four elements: (1) "a false and defamatory statement concerning another"; (2) "an unprivileged publication to a third party"; (3) "fault amounting at least to negligence on the part of the publisher"; and (4) "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Harris v. Bornhorst*, 513 F.3d 503, 522

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations "must be enough to raise a right to relief above the speculative level." *Id*.

In Plaintiff's Eighth Claim, he alleges a violation of Ohio Ethics Laws.  It appears that Plaintiff raised concerns with the Ohio Ethics Commission regarding Vinod K. Gupta, stating that Gupta used publicly funded programs and "has a place of business for his personal business" at LCCC, and "[t]his is a clear conflict of interest that has been ignored by the [Commission]." (Doc. No. 28 at 63-64). Plaintiff also states that the Commission "cleared [Gupta] from these charges because [Gupta] is a good friend of the Ohio Ethics Commission Board." (*Id.* at 61). Plaintiff claims in a conclusory fashion that "[n]ot applying the law is harmful to the public and to the Plaintiff." (Id. at 65).  The remainder of the "allegations" contained in this claim consist of a general outline of the Ohio Ethics Laws.  Plaintiff's Eighth Claim contains no factual allegations as to how Plaintiff was injured by the alleged wrongdoing or what cause of action Plaintiff could be raising.  Consequently, Plaintiff has failed to provide the Defendants sufficient notice of his precise claim and the grounds upon which it rests, and his claim must, therefore, be dismissed. *See Twombly*, 550 U.S. at 555.

In Plaintiff's Ninth Claim, he alleges a violation of Ohio's Public Records Act (Ohio Revised Code § 149.43). In an entirely conclusory manner that is completely devoid of any factual support, Plaintiff alleges that Defendants Ohio Attorney General, Ohio Department of Higher Education, LCCC, Ohio Ethics Commission, and Ohio Turnpike Commission "refused to release public records" and "denied Plaintiff access to inspect these records." (Doc. No. 28 at

---

(6th Cir. 2008) (quoting *Akron-Canton Waste Oil v. Safety-Kleen Oil Servs.*, 611 N.E.2d 955, 962 (Ohio Ct. App. 1992) (internal quotation marks omitted)).

66).  He further states that "this violation kept this secret alliance of corrupt officials and greedy

businessmen unveiled until now." (*Id.*). For the reasons stated above, Plaintiff fails to state a

plausible claim for violation of Ohio's Public Records laws. *See Twombly*, 550 U.S. at 555.

       In Plaintiff's Tenth Claim, he alleges a violation of Ohio Revised Code § 2923.32,

"Engaging in pattern of corrupt activity." Once again, Plaintiff's claim contains no facts to

support such a claim.  Rather, Plaintiff's one-sentence claim states that "Defendants' conduct

and participation, * * * in the enterprise American Rail, LLC is a clear pattern of corrupt

activities that deprived Plaintiff from interest and membership in American Rail, LLC." (Doc.

No. 28 at 67). Plaintiff's conclusory allegations of unspecified and undifferentiated wrongdoing

without providing any factual allegations in support of such a claim fail to satisfy the

*Iqbal/Twombly* standard. *See Kurek v. Ohio Dept. of Dev. Disabilities*, 2017 U.S. Dist. LEXIS

65473, at *15-16. Plaintiff's claim is nothing more than "an unadorned,

the-defendant-unlawfully-harmed-me accusation" and, therefore, fails to state a plausible claim.

*See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

       In Plaintiff's Eleventh Claim, he alleges a violation of the Equal Employment

Opportunity Act.  Plaintiff states that Defendants "violated Civil Rights Laws and Statutes"

when they hired Vinod K. Gupta to be manager of strategic partnerships at the Ohio Ethics

Commission.  He claims that "this act elevated [Gupta] to a position * * * he did not deserve."

(Doc. No. 28 at 67). This allegation has no connection to Plaintiff's employment. And the fact

that Plaintiff does not approve of Gupta's purported appointment does not state a cause of

action. This claim is illogical and unsupported, and is dismissed.

       Plaintiff's Twelfth and Thirteenth Claims allege violations of Ohio's Uniform Trade

Secrets Act (Ohio Revised Code §§ 1333.61 through 1333.69) and Ohio's Deceptive Trade Practices (Ohio Revised Code § 4165.01 et seq.). In his Twelfth Claim, Plaintiff states that "GexPro and Defendants benefitted million of dollars from Plaintiff['s] trade secrets, trademarks, logo, trade name, patent-pending, and trade secret" and he is, therefore, entitled to "injunction against misappropriation." (Doc. No. 28 at 68). The remainder of the claim outlines portions of Ohio Revised Code § 1333.62, which addresses misappropriation. Plaintiff fails to provide facts from which the Court can discern a plausible claim.

Plaintiff states in his Thirteenth Claim that "[t]he acts and conduct of Defendants in hijacking America Rail's trade secrets, patent-idea, trademarks, customer lists, relationships with suppliers and customers and utilizing Plaintiff['s] knowledge and prior successful work in the rail industry constitute deceptive trade practices" in violation of Ohio's Deceptive Trade Practices. (*Id.* at 69). He then states that "Defendant has knowingly committed said unfair deceptive and unconscionable acts and practices" and American Rail "is likely to be irreparably damaged" as a result. (*Id.*). Finally, Plaintiff's claim includes a long and rambling statement, asserting as follows: "Defendants violated Civil Rights Laws and Statutes described in the civil right act of 1964 and by passing the Equal opportunities employment laws when they hired [Vinod K. Gupta] knowing he is not qualified, had long history of destroying businesses and entrepreneurs, and by offering him a short cut to be the Manager of Strategic Initiatives to the Ohio Turnpike Commission, have harmed, and still harms as of today, the Plaintiff and his business * * *." (Id. at 70).  These statements are entirely conclusory.  Moreover, Plaintiff's Thirteenth Claim fails to include any facts suggesting exactly what happened with his business and how he was harmed.

-19-

Plaintiff's Twelfth and Thirteenth Claims fail to give the Defendants fair notice of what the his legal claims are and the factual grounds upon which they rest and are, therefore, dismissed. *See Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008).

## 5. Legal Malpractice

Plaintiff's final claim alleges legal malpractice against Defendant Buckingham, Doolittle & Burroughs, LLC ("Buckingham"). In support, Plaintiff alleges that he hired Buckingham to represent himself and American Rail, LLC ("American Rail") and Buckingham committed malpractice when it forced Plaintiff to sign a shareholder agreement, "leaked valuable and sensitive" information to other defendants in this case, and "sometimes cop[ied] Plaintiff on certain emails and sometimes email[ed] Defendants without copying Plaintiff." (Doc. No. at 23-24). In its motion to dismiss, Buckingham indicates that it represented the interests of American Rail, not Plaintiff, and even if Buckingham and Plaintiff had an attorney-client relationship, the statute of limitations has expired on Plaintiff's purported malpractice claims. (*See* Doc. 119).

Under Ohio law, to demonstrate a claim for legal malpractice, a plaintiff must establish: "(1) an attorney-client relationship, (2) professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, (5) and damages." *Hedges v. Bittinger*, No. 1:17CV720, 2020 U.S. Dist. LEXIS 229673, at *9 (N.D. Ohio Apr. 9, 2020); *Shoemaker v. Gindlesberger*, 118 Ohio St. 3d 226, 228, 2008-Ohio-2012, 887 N.E.2d 1167 (Ohio 2008) (citing *Vahila v. Hall*, 77 Ohio St. 3d 421, 427, 1997-Ohio-259, 674 N.E.2d 1164 (Ohio 1997)). The statute of limitations for a legal malpractice claim is one year. Ohio Rev. Code § 2305.11(A).

An action for legal malpractice in Ohio accrues when "there is a cognizable event

whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398, at syllabus (1989) (citing *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St. 3d 385, 528 N.E.2d 941 (1988)).

Here, Plaintiff provides few facts concerning his relationship with Buckingham.  But, it appears that Plaintiff believed Buckingham represented him, stating that he hired Buckingham "to be his personal lawyers * * * and at the same time to represent American Rail." (Doc. No. 28 at 23). In its motion to dismiss, however, Buckingham explained that it represented American Rail, for which Plaintiff was an officer and member. (Doc. No. 119 at 7). According to Buckingham, when Plaintiff breached his restrictive covenants to American Rail, Buckingham represented the company in litigation filed against Plaintiff in an Ohio state court from 2016 to the litigation's termination in 2017. (*Id).*

Regardless of the relationship between Plaintiff and Buckingham, however, it appears that on February 23, 2016, American Rail, represented by Buckingham, filed a breach of contract action against Plaintiff in the Summit County Court of Common Pleas. Plaintiff's own Complaint acknowledges Buckingham's representation of the company in the Ohio litigation. (*See* Doc. No. 28-1, Exhibit B4). Plaintiff was, therefore, on notice at the time that lawsuit was filed in 2016 that Buckingham acted adversely to him. Accordingly, Plaintiff's malpractice action, filed more than four years after this cognizable event, is time-barred.

Plaintiff's legal malpractice claim is dismissed.

### IV. CONCLUSION

In light of the foregoing, the following motions are GRANTED: Motion to Dismiss, filed by Governor DeWine, Ohio Attorney General, Thomas Strickrath, Ohio Ethics Commission, Lorain County Community College, and Ohio Department of Higher Education (Doc. No. 67); Motion to Dismiss (Doc. No. 84) and Amended Motion to Dismiss (Doc. No. 194), filed by IGW Solutions LLC; Motion to Dismiss (Doc. No. 85) and Amended Motion to Dismiss (Doc. No. 193), filed by GexPro Rexel USA, Inc.; Motion to Dismiss, filed by Ohio Turnpike and Infrastructure Commission "erroneously sued as the Ohio Turnpike Commission" (Doc. No. 87); Motion to Dismiss, filed by Edison Welding Institute (Doc. No. 116); Motion to Dismiss, filed by Buckingham, Doolittle & Burroughs LLC (Doc. No. 119); and Motion to Dismiss (Doc. No. 134) and Amended Motions to Dismiss (Doc. Nos. 178, 179), filed by Nita Gupta and Vinod K. Gupta.

The following motions are GRANTED IN PART as noted below: Motion to Dismiss (Doc. No. 122) and Amended Motion to Dismiss (Doc. No. 196), filed by Joseph L Nemeth, III; and Motion to Dismiss (Doc. No. 155) and Amended Motion to Dismiss (Doc. No. 195), filed by Jason L. Nemeth.

To the extent Plaintiff's allegations in his Fourth and Fifth Claims are based on discrimination, they are without merit and are dismissed. To the extent Plaintiff's allegations in his Fourth and Fifth Claims are based on wrongful eviction, forcible entry and detainer, and negligence, they are dismissed as to all Defendants except Jason L. Nemeth and Joseph L. Nemeth, III.

Additionally, the following motions are DENIED AS MOOT: Motion to Dismiss, filed

by Ratanjit Sondhe (Doc. No. 121); Plaintiff's Motion to Delay Rulings (Doc. No. 169); Motion to Compel (Doc. 185); Motion for Sanctions of Dismissal (Doc. No. 189); Plaintiff's Motion for Sanctions of Default Judgment (Doc. No. 202); Plaintiff's Motion to Strike Motion for Sanctions (Doc. No. 205); and Plaintiff's Motion for Default Judgment against Defendant Lorain County Homebuyer's, LLC (Doc. No. 217).

Plaintiff's Motion to File Electronically (Doc. No. 188) is GRANTED.

Plaintiff's Motion for Leave to File Second and Final Amended Complaint (Doc. No. 186) is DENIED.

This action shall proceed solely against Jason L. Nemeth and Joseph L. Nemeth, III on Plaintiff's purported claims of wrongful eviction, forcible entry and detainer, and negligence outlined in Plaintiff's Fourth and Fifth Claims.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated:  9/7/21