UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Ameer Alghusain, | ) | CASE NO. 1:21 CV 693 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| v. | ) | |
| | ) | |
| Jason L. Nemeth, et al., | ) | Memorandum of Opinion and Order |
| | ) | |
| Defendants. | ) | |

### Introduction

This matter is before the Court upon Defendant Jason L. Nemeth's Amended Motion for Summary Judgment. (Doc. 249). This matter arises from a prior relationship of the parties. For the following reasons, the motion is granted in part and denied in part.

### Facts

*Pro se* plaintiff Ameer Alghusain filed this Complaint in July 2020 against numerous defendants in the Northern District of California. An Amended Complaint was filed. The matter was transferred to this Court on the basis of proper venue. On initial screening, this Court issued a Memorandum of Opinion and Order dismissing all claims with the exception of those asserted against defendants Jason Nemeth and Joseph Nemeth, III for wrongful eviction, forcible entry and detainer, and negligence. The claims were based on plaintiff's allegations that he had a verbal agreement to rent a home from Jason Nemeth. Plaintiff suffered an injury while on the property, incurred medical bills, and was unable to work as a result of his injuries. He was then wrongfully evicted from the home and Jason and Joseph Nemeth retained his personal

belongings. (Doc. 224).

Plaintiff filed a Second Amended Complaint against the two remaining defendants asserting four claims for relief: wrongful eviction, forcible entry and detainer, negligence, and intentional infliction of emotional distress. Plaintiff alleged that these defendants owned a house at 1338 W. 11th Street in Lorain, Ohio.  They were plaintiff's landlords when he rented the house from July 2018 through October 21, 2019, when defendants wrongfully evicted him. Plaintiff paid rent to the defendants via check, cash, and electronic transfer, and also paid for electric utilities. After multiple requests to repair issues at the house, plaintiff severely injured his knee on March 21, 2019, at the jacuzzi area when his leg fell through broken wood on the deck. Defendants evicted him in October, forcibly entering his rooms and "detaining" his personal items.

Defendant Jason Nemeth filed a Counterclaim for money allegedly owed to him by plaintiff for loans which plaintiff failed to repay.  Two claims were asserted: breach of contract and unjust enrichment. Plaintiff thereafter settled and dismissed his claims with defendant Joseph Nemeth.

Defendant submits the affidavits of Joseph and Jason Nemeth. Joseph Nemeth avers the following.  He is the primary owner of Lorain County Homebuyers, LLC (referred to as the Company).  The Company is the current owner of real property located at 1338 W. 11th Street in Lorain, Ohio (referred to as the Premises), and has owned the property since April 9, 2018. At no point did plaintiff enter into a lease agreement (verbal or written) with affiant or the Company regarding the Premises. Since the Company purchased the Premises, there have been no complaints made to affiant regarding any repairs needed to the back deck or the hot tub.

Affiant has been to the Premises several times since plaintiff's alleged injuries and has never seen any damage to the deck. Affiant has never been provided with a complete list of items (or their respective values) for which plaintiff is seeking damages, or documentation regarding his alleged injuries.

      Jason Nemeth avers he was the sole tenant of the Premises from 2019 to 2021 based on a written/verbal agreement with the Company. Affiant does not have any ownership interest in the Company. At no point did plaintiff enter into a written lease agreement with affiant or the Company regarding the Premises. Affiant would occasionally permit plaintiff, who lived in California, to stay with him as a guest when he came to northeast Ohio for various business matters. Plaintiff stayed with others as well on such occasions. To his knowledge, plaintiff never left any property behind when he went back to California or stayed with other friends, or when told he was no longer welcome at the Premises. Affiant does not recall if plaintiff paid any rent to him. The Ohio Edison electric bill was in plaintiff's name, but that was an arrangement made between plaintiff and affiant as a way for plaintiff to contribute to the costs of staying with affiant. Furniture and tools on the Premises belonged to affiant. Plaintiff did not have any firearms on the Premises that affiant was aware of. Affiant told plaintiff he was no longer welcome at the Premises, but he did not evict him. Affiant did not dispose of any property owned by plaintiff. During the time he occupied the Premises, there were no complaints made to affiant about the back deck or hot tub. Affiant never saw any damage to the deck after plaintiff's alleged injury. Affiant has never been provided with a list of items (or their respective values) for which plaintiff is seeking damages, or documentation regarding his alleged injuries. Over several years of dealings with plaintiff, plaintiff owed affiant $26,537.35.  A demand letter was

sent. An email sent by plaintiff to affiant on October 11, 2019, admits that plaintiff owed $12,050.00. Plaintiff wrote three checks "in advance" of payments, totaling $13,000 but never made the funds available.

Four exhibits are attached to Jason Nemeth's affidavit. The "demand letter," dated January 8, 2020, is addressed to plaintiff by an attorney on Jason Nemeth's behalf. The letter states in part:

> Mr. Nemeth requested we send you a formal request to refund fraudulent investment funds totaling $25,037.35 immediately. We understand the investments were made under fraudulent pretenses with the intent to never invest the funds, but rather to convert those funds to your own use.

(Jason Nemeth aff. Ex.A). The affidavit identifies the second exhibit as a "spreadsheet with a breakdown of the amounts owed." (*Id.* Ex. B). The third exhibit is a copy of three checks signed by plaintiff and dated in 2017 and 2018. Two are paid to the order of Jason Nemeth, and one to an LLC. (*Id.* Ex. C). The fourth exhibit is an October 11, 2019 email from plaintiff to defendant referring to amounts owed by plaintiff to defendant totaling $12,050. (*Id.* Ex. D).

Defendant also submits the affidavit of his lawyer who avers that he emailed Requests for Admissions to plaintiff on March 1, 2022, but that plaintiff did not respond within 30 days. A copy of the email and Requests are provided. These included requests to admit that there was no written or verbal agreement to reside at 1338 West 11th, and that plaintiff paid no rent to reside there.

Plaintiff submits two exhibits with his brief in opposition.[1] Plaintiff submits his

---

[1] Plaintiff was permitted to supplement his brief following a discovery Order but did not attach any further evidence.

responses to the Requests for Admissions which he sent to defendant on April 6, 2022. (Ex. A).[2] Therein, plaintiff admits that there was no written agreement regarding the Premises, but denies that there was no verbal agreement or that he paid no rent. Plaintiff also submits the Ohio Edison bills addressed to him at 1338 W. 11th from March 2019 through November 2019. (Ex. B). Other unauthenticated evidence contained in plaintiff's brief is discussed below.

This matter is now before the Court upon defendant Jason Nemeth's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate

---

[2] Although defendant emailed the Requests, plaintiff states he did not receive a mailed copy and that there was no notice on the Court's ECF system. Plaintiff did receive the Requests, however, as evidenced by the fact that he responded to them.

that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993).  The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

**(A) Second Amended Complaint**

**(1) wrongful eviction**

Plaintiff alleges that he was wrongfully evicted by defendants from the house at W. 11th on October 21, 2019, while he was working out of state and without any proper notice or procedure.  (Second Am. Compl.). To succeed on this claim, plaintiff must establish that he was a tenant at 1338 W. 11th Street in Lorain, Ohio.  Under Ohio law,

> R.C. Chapter 5321, Ohio's Landlord Tenant Act, regulates the relationship between residential landlords and their tenants. R.C. 5321.15(A) provides that landlords may only evict residential tenants by following the procedures set forth in R.C. Chapters 1923, 5303, and 5321. R.C. 5321.01(B) defines a landlord as "the owner, lessor, or sublessor of residential premises, the agent of the owner, lessor, or sublessor, or any person authorized by the owner, lessor, or sublessor to manage the premises or to receive rent from a tenant under a rental agreement." A tenant is an individual who is "entitled under a rental agreement to the use and occupancy of residential premises to the exclusion of others." R.C. 5321.01(A). A rental agreement is "any agreement or lease, written or oral, which establishes or modifies the terms, conditions, rules, or any other provisions concerning the use and occupancy of residential premises by one of the parties." R.C. 5321.01(D). "A tenant at will is one who, under the terms of a written lease agreement, continues in a tenancy as long as the parties mutually agree." *Stone v. Cazeau*, 9th Dist. Lorain No. 07CA009164, 2007-Ohio-6213, 2007 WL 4146777, ¶ 6, citing *Freedline v. Cielensky,* 115 Ohio App. 138, 141, 184 N.E.2d 433 (9th Dist.1961), quoting *Say v. Stoddard*, 27 Ohio St. 478 (1875). "An individual who lives in a residence with another without a rental agreement and without the payment of rent is not a tenant and cannot maintain an action for wrongful eviction." *Id.*, citing *Ogle v. Disbrow*, 6th Dist. Lucas Nos. L 04 1373, L 05 1102, 2005-Ohio-4869, 2005 WL 2249582, ¶ 17.

*Mercer v. Halmbacher*, 44 N.E.3d 1011, 1015 (Ohio App. 9th Dist. 2015). *See also Lee v. Wallace*, 186 Ohio App. 3d 18 (Ohio 8th App. Dist. 2010) (citations omitted). ("An individual who lives in a residence with another without a rental agreement and without the payment of rent is not a tenant and cannot maintain an action for wrongful eviction.")

In the absence of a written lease agreement, a periodic tenancy may be created when rent is paid and accepted. *Reid v. Plainsboro Partners*, 2010 WL 3610931 (Ohio 10th App. Dist. Sept. 16, 2010) (citations omitted). "To terminate a month-to-month tenancy, R.C. 5321.17(B) requires a landlord to provide the tenant notice of termination at least 30 days 'prior to the periodic rental date.' If the tenant remains in possession of the premises after the expiration of the 30-day period, the landlord must serve the tenant with a three-day notice under R.C. 1925.04(A) before initiating an eviction action." *Price v. Brooks*, 2022 WL 3330460 (Ohio 1st App. Dist.August 12, 2022) (citations omitted).

Defendant asserts that plaintiff was not a tenant at 1338 W. 11th Street and, therefore, defendant was not required to follow any eviction procedures. Defendant states that plaintiff did not enter into a rental agreement with Jason or Joseph Nemeth whose affidavits state that at no point did plaintiff enter into a written or verbal lease agreement with either of them. Jason Nemeth further avers he was the sole tenant at the premises and that he allowed plaintiff to occasionally stay with him as a guest when plaintiff, who lived in California, came to northeast Ohio on business. Jason Nemeth also avers that he does not recall that plaintiff paid any rent to him, and that while the Ohio Edison electric bill was in plaintiff's name, "that was an arrangement made between plaintiff and I to help him contribute to the costs when he would stay with me." Defendant additionally relies on the unanswered Requests for Admissions which would establish that plaintiff had no written or verbal rental agreement, and paid no rent.

Plaintiff maintains that he was a tenant from December 2018[3] until October 2019 at the W. 11th premises. Plaintiff points to the following.[4] The spreadsheet submitted with Jason Nemeth's affidavit shows amounts owed by plaintiff to defendant. It identifies plaintiff as "payee" and under the heading "Memo," lists "Rent & Bills" from "Dec 2018" through "Jan 2020" with amounts of $550.00 each. Plaintiff submits a copy of an email from Jason Nemeth to plaintiff, dated October 10, 2019.[5] The email contains the heading, "Jason's money that Ameer has- itemized list and repayment schedule." The email states in full:

---

[3] The Second Amended Complaint alleges that he was a tenant beginning on July 10, 2018.

[4] This "evidence" is not appended to an affidavit, submitted as an exhibit to a deposition, or otherwise offered in a documentary form admissible in evidence. But, plaintiff is *pro se* and the Court has considered it.

[5] This is clearly the predecessor email to the October 11, 2019 email provided by defendant.

> Ameer,
>
> I have attached the very details spreadsheet with online bank reports, dates, and notes to each.  This has been going on since my first investment in 2016.  Also regarding rent an [sic] bills.  I included the rent and bills owed from your last payment November 2018.  That's almost a year. Total rent and bill is about $1,150 per month so I just put it as $550 for each per month and I paid the extra $50.
> Please review the attachments and let me know if you have any issues.  This is a lot of my money that you have so I propose $2,000 per month starting October 15th. That will be generous to give you more than a year to pay me back my own money that you have. You say you always get bids for a lot of money so you should have no problem giving me back my money that you have.

Plaintiff provides a copy of the October 21, 2019 email from Jason Nemeth to plaintiff stating in part, "You are not welcome at 1338 W. 11th St. and I will need a third party to serve you legally and then you must show up to court." He provides a copy of a declaration filed in the court in California wherein Jason Nemeth states, "I also rented him a room in my house/apartment from approximately 2015 through 2018 of which he defrauded me of rent and utilities as well. Finally, plaintiff submits eight Ohio Edison bills addressed to plaintiff at 1338 W. 11th St. for billing dates between February and October 2019.

      The Court finds an issue of fact as to whether plaintiff was a tenant at the W. 11th property. Notwithstanding the Requests for Admissions which ordinarily would establish that plaintiff had no lease and did not pay rent given that plaintiff did not answer them within 30 days, the Court must consider the other evidence submitted on behalf of both parties.  Although Jason Nemeth avers that plaintiff did not enter into a written lease agreement with him or the Company[6] and that he did not recall if plaintiff paid him any rent, defendant acknowledges that the Ohio Edison electric bill was in plaintiff's name as an arrangement between Jason and

---

[6] He is silent as to whether or not there was a verbal agreement.

plaintiff to help with costs when plaintiff would stay with him. Defendant's admission that there was an arrangement for plaintiff to pay the electric bill as a way of contributing to the costs of the apartment is indicative of an oral agreement establishing conditions to occupy the house.

In *Scott v. Schuster*, 2019 WL 5607918 (Ohio 9th App. Dist October 30, 2019), it was determined that a rental agreement was formed because there was an oral agreement between the parties that established the conditions under which Schuster could occupy the apartment unit. Specifically, the owners of the unit would allow Schuster to reside in the apartment unit as long as he paid the electric bill. According to Schuster, he paid the bills he received. Because it was not disputed that the unit's electricity usage was billed monthly, the oral rental agreement created a month-to-month tenancy. Under O.R.C. § 5321.17(B), a landlord may only terminate a month-to-month tenancy by giving notice at least 30 days before the periodic rental date and defendant failed to do so.

Contrary to defendant's argument in his reply brief that there is no evidence that plaintiff paid the utility bills, the bills (which are addressed to plaintiff at the W.11th address) show that at least some payments were made over the months.

Additionally, the spreadsheet prepared and submitted by defendant, shows "rent and bills" with reference to dates including December 2018 through January 2020. Neither party provides a clear or adequate explanation of the spreadsheet, but it appears to have been originally attached to the October 10, 2019 email from defendant to plaintiff. The email refers to "rent and bills owed from your last payment November 2018. That's almost a year..." Again, it is not clear whether the email (or the spreadsheet) refers to rent due from the period

the parties rented the W. 11th property.[7]

As there is an issue of fact as to whether plaintiff was a tenant, and it appears to be undisputed that defendant did not give plaintiff the requisite statutory notice to vacate the Premises, summary judgment is denied as to the wrongful eviction claim.

### (2) forcible entry and detainer

Plaintiff alleges that defendants "entered my rooms and garage at my house at 1338 West 11th Street, Lorain, Ohio 44052 on or after October 21, 2019 while I was working out of state without my permission or legal permission of any Court by force and ... retained all my personal belongings..." in violation of the Forcible Entry and Detainer statute. (Second Am.Compl.).

"R.C. 1923.02(A)(9) creates a cause of action for forcible entry and detainer '[a]gainst tenants who have breached an obligation imposed upon them by a written rental agreement.' " *Shaker House LLC v. Daniel*, _ NE3d _, 2022 WL 3269708 (Ohio 8th App. Dist. August 11, 2022). "The purpose of the forcible entry and detainer statutes is to provide a summary, extraordinary, and speedy method for the recovery of possession of real estate in the cases especially enumerated by statute." *Id.* (citations omitted). See also *Hometown Apartments v. Hoffa,* 2022 WL 3134358 (Ohio 2d App. Dist. August 5, 2022) ("A forcible entry and detainer action is intended to serve as an expedited mechanism by which an aggrieved landlord may recover possession of real property.") Because the statute creates a cause of action for the landlord against a tenant, plaintiff is not entitled to bring the claim. Summary judgment is

---

[7] The briefs refer to an apartment the parties previously rented in Westlake, but the affidavits do not address this.

granted on this claim.

### (3) negligence

Plaintiff alleges that defendants' negligence caused him "severe injury to [his] right knee on March 21, 2019." (Second Am. Compl.). To establish a negligence claim, the plaintiff must demonstrate a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the defendant's breach of duty. *Goss v. USA Cycling, Inc.*, _ NE3d _, 2022 WL 2841923 (Ohio 8th App. Dist. July 21, 2022). Whether plaintiff was an invitee or a tenant, plaintiff has provided no evidence of any injury or resulting damages. At most, plaintiff states in his brief, "Medical bills and pictures of the accident show I was severely injured at the jacuzzi."

Having failed to demonstrate the elements of the claim, summary judgment is appropriate on this claim as well.

### (4) intentional infliction of emotional distress

Ohio law states:

> "To establish a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff; (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it could be considered as utterly intolerable in a civilized community; (3) that the actor's actions were the proximate cause of plaintiff's psychological injury; and (4) that the mental anguish suffered by the plaintiff was serious and of a nature that no reasonable man could be expected to endure it." *Kovacic v. Eastlake*, 11th Dist. Lake No. 2005-L-205, 2006-Ohio-7016, ¶ 92. "The mental anguish suffered by the plaintiff must be so severe and debilitating that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.'" *Weir v. Krystie's Dance Acad.*, 11th Dist. Portage No. 2007-T-0050, 2007-Ohio-5910, ¶ 26, quoting *Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983).

*Molai v. Standing Rock Cemetery Bd. of Trustees*, 2022 WL 3713658 (Ohio 11th App. Dist. August 29, 2022).

Plaintiff fails to provide evidence to establish any of the elements constituting this claim. At most, plaintiff states in his brief that defendant made him "feel less than white Americans by calling me "Fake American.' " Plaintiff states that this caused him to become depressed and suffer emotional pain. Even assuming the statement was made in the absence of documentary evidence, there is, at a minimum, no evidence of the resulting mental anguish. Nor can the Court conclude that the alleged statement was so extreme and outrageous as to go beyond all possible bounds of decency.

Summary judgment is granted as to this claim.

**(B) Counterclaim**

Defendant's Counterclaim asserts the following. Defendant and plaintiff have had "multiple business and personal interactions since approximately 2017." During that time, plaintiff requested financial assistance from defendant for rent for an apartment in Westlake, travel expenses, advances for business contracts, and insurance expenses. Plaintiff stated that he would repay the loans, and even gave defendant three "collateral checks" to be deposited for repayment (one for $5,500.00 dated 7/22/2017, one for $5,500.00 dated January 19, 2018 and one for $2,000.00 payable to defendant's business dated April 15, 2017). But, the checks were never able to be cashed. Defendant loaned plaintiff a total of $20,487.35.  On October 11, 2019, plaintiff sent defendant an email acknowledging he owed defendant $12,050.00, but still refused to repay any amount.  Count One asserts breach of contract and alleges that over the course of four years, plaintiff and defendant "made multiple agreements where Plaintiff

-13-

would reimburse Defendant for funds lent to Plaintiff." In consideration, plaintiff provided defendant with the three "collateral checks" totaling $13,000.00. Despite acknowledging that he owed $12,500, plaintiff has refused to make any payments to defendant. Count Two alleges unjust enrichment based on the same facts supporting the breach of contract claim.

**(1) breach of contract**

"The elements for claim for breach of contract include the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Four Elyria Co., LLC v. Brexton Constr., LLC*, 2022 WL 3714208 (Ohio 8th App. Dist. August 29, 2022). Although defendant presents evidence to show that he gave money to plaintiff which has not been repaid, he has not presented sufficient evidence of the terms of the alleged contract or consideration.[8]

For these reasons, issues of fact remain on the breach of contract claim.

**(2) unjust enrichment**.

"The elements of an unjust enrichment claim are (1) the plaintiff conferred a benefit on the defendant, (2) the defendant knew of the benefit, and (3) it would be unjust to allow the defendant to retain the benefit without payment to the plaintiff." *Lakhi v. Meritra Health Care, LLC,* 2022 WL 4002922 (Ohio 10th App. Dist Sept. 1, 2022). "Because unjust enrichment is an equitable remedy, this doctrine does not apply when a contract exists between the parties covering the same subject." *Id.* (citations omitted).  The Court acknowledges that this is an appropriate alternative theory of recovery, but finds issues of fact as to whether plaintiff was

---

[8] The amount allegedly owed is also unclear. The Counterclaim states that defendant loaned plaintiff a total of $20,487.35, the demand letter states $25,037.35 is owed, and defendant's affidavit avers that $26,535.35 is owed.

unjustly enriched by any monies provided by defendant.

**Conclusion**

For the foregoing reasons, defendant's Motion for Summary Judgment is granted on plaintiff's claims for forcible entry and detainer, negligence, and intentional infliction of emotional distress, but denied as to the claim for wrongful eviction. Defendant's Motion for Summary Judgment is denied as to the Counterclaim.

IT IS SO ORDERED.

Dated: 9/20/22

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Court
Chief Judge